OPINION OF THE COURT
Barry Hurowitz, J.
The plaintiffs, two companies, are engaged in the business of manufacturing and distributing women’s and children’s sweaters. They maintained a banking relationship with defendant for a period of several years including checking accounts, and a tax depository account for deposit of employees’ Federal withholding taxes and employee and employer Social Security *639 tax. The plaintiffs made deposits into this account pursuant to law. These payments were made with checks drawn on checking accounts of the plaintiffs made payable to "Chemical Bank.” Chemical Bank was to forward the withholding tax payments directly to the Federal Government.
From some as of yet undetermined time through sometime during May of 1989, Seymour Morgenstern, an accountant retained by the plaintiffs, allegedly wrongfully and secretly converted approximately $1,536,000 from the plaintiffs by depositing checks payable to "Chemical Bank” and intended for deposit with plaintiffs’ tax depository account into a different account Morgenstern had at the bank for a corporation called Amerco. The only endorsement or markings on the back of any of these checks, of which several copies were annexed to plaintiffs’ papers, were from Chemical Bank.
Plaintiffs allege that defendant, by its actions as well as omissions, acted in a grossly negligent, wanton and reckless manner and did not exercise reasonable care or commercial good faith; breached its express and implied contractual obligation to the plaintiffs; mistakenly credited the Amerco account with money properly belonging to the plaintiffs and intended for deposit in their depository account; breached its fiduciary duty to plaintiffs; breached its fiduciary duty to plaintiffs under article 4 of the Uniform Commercial Code; converted plaintiffs’ funds; wrongfully retained and refused to pay over sums belonging to plaintiffs by means of corrupt employees who colluded with Morgenstern and concealed such activities from the plaintiffs, and was wantonly and recklessly indifferent to the rights of its customer and exhibited utter disregard for the results that were likely to flow from this conduct. Plaintiffs are also seeking punitive damages and lost profits from the defendant.
Defendant’s motion for an order dismissing the cause of action for commercial bad faith is denied.
In determining the instant motion the court is obliged to assume the "truth of the facts asserted in the complaint and the affidavits opposing dismissal” and accord the "plaintiff the benefit of all favorable inferences that may be drawn from its pleadings” (Prudential-Boche Sec. v Citibank, 73 NY2d 263, 275 [1989]; see also, Underpinning & Found. Constructors v Chase Manhattan Bank, 46 NY2d 459, 462 [1979]).
Defendant argues that this case does not present the court with an issue of bad faith but that at most the allegations *640 amount to "a claim that defendant bank was negligent in not being sufficiently vigilant and/or not providing satisfactory instruction to its staff’ (Calisch Assocs. v Manufacturers Hanover Trust Co., 151 AD2d 446, 448 [1st Dept 1989]).
In Calisch (supra), the plaintiffs’ secretary and bookkeeper embezzled in excess of $1 million. The secretary, a named defendant, prepared checks made payable to various vendors of the plaintiff and then forged the endorsements of the payees and on occasion the signature of the plaintiffs’ president. She would then bring the checks to a branch of Manufacturers which would then cash these checks. The scheme escaped attention for a long period of time because the checks were for sums less than $1,000 and the same teller routinely cashed the checks. The Appellate Division reversed the lower court’s denial of defendant Manufacturers’ motion to dismiss the cause of action for commercial bad faith. The court determined that under the circumstances at most one employee of the bank may have knowingly or unwittingly aided the secretary’s scheme and as such the plaintiffs could only claim that the bank was negligent in failing to properly supervise or instruct its employees. However, Calisch (supra) is not dispositive of the case at bar in light of the holdings of the Court of Appeals in Prudential-Bache Sec. v Citibank (supra), and Hartford Acc. & Indent. Co. v American Express Co. (74 NY2d 153 [1989]).
In Prudential-Bache (supra), an employee of the plaintiff caused the issuance of checks made payable to companies that were not its customers but had corporate names similar to the names of the customers. One of the conspirators arranged to open accounts at a Citibank branch by bribing employees of the bank to open an account for a fictitious corporation without first obtaining proper opening account records or corporate resolution. The bank employees also failed to file the proper currency transaction forms as required by the International Revenue Service for cash transactions in excess of $10,000.
Once these accounts were activated the conspirators deposited and withdrew over $3.7 million of plaintiffs’ funds. The scheme was exposed after the employees’ supervisor conducted a review of account records based upon information obtained through a "tip”. Plaintiff brought the action against Citibank to recover the funds based in part on the theory of commercial bad faith.
*641 The bank claimed as a defense that the employees actually involved in the scheme and any employees who knew of the scheme were "adverse agents” as a matter of law or, in the case of employees who merely knew of the scheme, they were merely negligent.
The Court of Appeals amended the order of the Appellate Division which dismissed the plaintiffs’ entire proceeding against the bank since it determined that plaintiff had sufficiently pleaded a cause of action for commercial bad faith. The court held that the plaintiff pleaded "not merely a lapse of Vary vigilance’ * * * or even 'suspicious circumstance which might well have induced a prudent banker to investigate’ ” but, instead, the plaintiff portrayed a scheme of massive dimension accomplished in part through a pattern of money laundering conducted on a near daily basis by a single individual concentrated within a few months at one branch (Prudential-Bache Sec. v Citibank, supra, at 276). The court held that using these facts prior to discovery the court was required to view plaintiffs’ assertion favorably and as such they were sufficient to form the basis for a cause of action for commercial bad faith.
The case at hand, while alleging commercial bad faith and involving checks is not exactly on point with either Calisch (supra), or Prudential-Bache (supra), because both of those cases involved checks made payable to various entities and either endorsements were forged as in Calisch, or the checks were made payable to a shell corporation and deposited into its account. These cases involved situations where, generally, Uniform Commercial Code § 3-405 (1) (c) would apply to protect the banks. Uniform Commercial Code § 3-405 (1) (c) provides that "[a]n indorsement by any person in the name of a named payee is effective if * * * an agent or employee of the maker or drawer has supplied him with the name of the payee intending that the latter have no such interest.” This has been viewed as a decision of the Legislature, made in order to "allocate the loss to the drawer-employer because it perceived that that party was in a better position to prevent such loss from occurring in the first instance” (Prudential-Bache Sec. v Citibank, supra, at 273).
This allocation of loss may revert back to the bank, however, where a plaintiff can show "bank dishonesty or * * * complicity by principals of the bank in alleged confederation with the wrongdoers” (Prudential-Bache Sec. v Citibank, su *642 pro, at 277). In Calisch (supra), the court held that even assuming the facts most favorable to the plaintiff, it failed to allege facts which could shift the allocation of loss. In Prudential-Bache (supra), it held that the plaintiff did allege facts which, if proved, could shift the allocation of loss.
In the case at bar, however, UCC 3-405 (1) (c) does not come into play at all. Here the checks were not made payable to a payee who was not legitimate and they were not endorsed by anyone other than the named payee, i.e., the defendant. Thus, this case falls somewhere in between the Calisch and Prudential-Bache decisions (supra).
The situation may be clarified, however, by virtue of the decision in Hartford Acc. & Indem. Co. v American Express Co. (74 NY2d 153 [1989], supra). There the court held that "a depositary bank cannot disburse its customer’s funds without inquiry of the customer.” (Supra, at 164.) Thus, where a "bank’s customer (having no indebtedness to the bank) drew checks to the order of the bank, intending that the proceeds be deposited in its account, but a third party diverted the proceeds” and where the bank failed to follow the rule and inquire of its customer but instead treated the customer’s check payable to the bank as payable to the bearer, the bank is "negligent as a matter of law” (Hartford Acc. & Indem. Co. v American Express Co., supra, at 164).
Hartford (supra) resolves the difficulty of where within the Calisch — Prudential-Bache spectrum the case at bar lies. Under Hartford, Chemical Bank’s acts at best, even if there was no other wrongdoing attributable to them, are to be categorized as negligent "as a matter of law” and not merely as a failure on their part to supervise or train employees.
The court must then inquire as to the extent of the bank’s involvement. The checks were made payable to the bank which permitted them to be deposited in the Morgenstern account without any endorsement by him. The bank personnel never inquired of plaintiffs regarding these occurrences. Morgenstern could not have deposited the money over the bank’s objection.
In addition, even if the UCC were to apply to this case, the plaintiffs could not have been in a better position to know about the scheme even if they reviewed their bank statements, because the checks were not endorsed. Morgenstern also apparently avoided suspicion by ensuring that there were sufficient funds in the depository accounts so that plaintiffs *643 would have received no notice that they either overpaid or underpaid their taxes.
Thus, this court holds that the plaintiffs have stated a cause of action for commercial bad faith. This holding is without prejudice to defendant’s case at trial and is subject to plaintiffs establishing the "heavy burden” of proving bank dishonesty or complicity (Prudential-Bache Sec. v Citibank, supra, at 277).
[Portions of opinion omitted for purposes of publication.]